FILED - USDC -NH
2025 MAY 29 PM4:01

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

CCIVIL ACTION NUMBER

COMPLAINT FOR INJUNCTIVE RELEIF, DECRARATY JUDGMENT AND DAMAGES

JURISDICTION AND VENUE

# I. JURISDICTION AND VENUE

1. This Court has **subject matter jurisdiction** pursuant to **28 U.S.C. § 1332** (diversity jurisdiction), as the amount in controversy exceeds $75,000 and the parties are citizens of different states.
2. This Court also has **supplemental jurisdiction** under **28 U.S.C. § 1367** over state law claims, including those arising under **RSA 205-A:21**, New Hampshire's Manufactured Housing Park Sale Notification Statute.
3. Venue is proper in this District pursuant to **28 U.S.C. § 1391** because the property and events giving rise to the claims occurred in New Hampshire.

PARTIES

PLAINTIFF IS PRESIDENT OF NEW HAMPHIRE CONSUMER COOPERTIVE , independent Cooperative organized under RSA 301-A and RSA 293-A in July 2023 with standing to assert claims on behalf of residents of Cotton Farm Village game Mobile Home park owned by Defendant Kenneth C Burnham, Defendant Cotton Farm MHP LLC is Corporation registered NH and doing Business in NH as the owner of the above named park

Defendant Burnham is a resident of North Carolina and is the president and owner of this park offered for sale to Cotton Farm Village Cooperative formed with Technical assistance of Defendant NH Community Loan Fund and Roc USA and is the buyer of this park

Defendant NH Community Loan Fund is non profit organization located in NH and is provider of TA and financing in sale of Defendant park to Cotton Farm Village cooperative

Defendant Roc USA is a Non Profit entity facilitating the sale of the park

Defendant Marty and Dorothy Silverman Foundation is the Non Profit entity located in NY and is provider of portion of mortgage for Cotton Farm Village Cooperative in pending sale.

Eileen Katz /CFP
Cotton Farm Homeowner Alliance Cooperative
130 Beech Plain Rd
Danville, NH 03819
617-970-2995

The New Hampshire Community Loan Fund (NHCLF) is wrong to frame the decision as a binary choice between:

1. **Paying $985 in lot rent in a resident-owned cooperative** (the **highest** in NH ROC history),
   **versus**
2. **Paying $1,799–$1,899 for an apartment the same size.**

Here's why this argument is **misleading, coercive, and economically unsound**:

---

**1. False Binary: It Ignores Other Ownership Models**

- NHCLF frames it as "buy the co-op or face unaffordable apartment rent," ignoring **other viable options**:
  - Forming an **independent resident cooperative** not controlled by NHCLF/ROC USA.
  - Demanding **public ownership** or **land trust acquisition** due to infrastructure failure.
  - Legal remedies to block predatory or inflated sales due to **habitability violations.**

---

**2. Coercion: "No Choice" Is Not Consent**

- Saying residents "voted to buy because they have no choice" is **not true consent—it's economic coercion**.
- This undermines the legitimacy of the "resident ownership" model. If lot rent is **unsustainably high**, it's **not ownership**, it's **debt servitude** with a cooperative label.

---

**3. Unfair Comparison: Rent vs. Equity**

- The $1,899 apartment includes:
  - **Utilities, maintenance, amenities**, and no major repair responsibilities.
- The $985 ROC lot rent **does NOT include:**

- Homeownership costs (mortgage or value of the manufactured home).
- Infrastructure repair burden.
- Property tax increases or special assessments.

- Residents are being misled into thinking they're **saving** money, when they may be **paying more overall**, with **far greater risk.**

---

**4. Exploiting Fear of Investors**

- NHCLF is using the threat of investor rent hikes to **justify their own record-breaking lot rent.**
- But lot rents in **ROC parks have also skyrocketed,** especially where debt service is high and reserves are low.

---

**5. Ignores Market Manipulation and Self-Dealing**

- If the price of the park is **inflated,** and NHCLF is facilitating the sale through **ROC USA financing,** they are:
  - Locking residents into **unaffordable debt,**
  - Using **nonprofit capital** (e.g., PRI grants) to **protect a fraudulent seller,**
  - And **misusing public trust** by presenting it as a "win."

---

**6. Inconsistent with Precedent and Mission**

- NHCLF's own mission is **affordable, sustainable ownership.**
- A co-op with:
  - **Decades of infrastructure failure,**
  - **No meaningful reserves,**
  - **The highest lot rent in NH,**
  - And a **waiver of liability for injury/death**
    —violates that mission.

**Summary:**

**The choice NHCLF presents is dishonest and manipulative.** It's not about empowering residents—it's about shielding themselves and investors from legal and financial accountability while selling an illusion of ownership. The residents **do have choices**—they just haven't been given **truthful information** or **independent legal representation** to make them.

**Count X: Fraudulent Misrepresentation and Coercion in Violation of Federal and State Law**

**Defendants New Hampshire Community Loan Fund (NHCLF), ROC USA, and their agents engaged in materially misleading conduct, including coercive tactics and false representations, to induce vulnerable homeowners to purchase Cotton Farm Village at a grossly inflated price under the guise of "resident ownership," despite long-standing infrastructure failure, legal violations, and unaffordable rent levels.**

1. **False Binary and Coercion**

    - NHCLF presented a false choice to residents: either (a) vote to purchase the park at the highest lot rent in New Hampshire cooperative history ($985), or (b) face potential lot rent increases from a hypothetical investor buyer, or be forced into an apartment costing $1,799–$1,899/month.
    - This framing deliberately ignored lawful and viable alternatives, including:
        - Reorganization under an **independent cooperative** not affiliated with NHCLF/ROC USA.
        - **Public acquisition, condemnation,** or **eminent domain** based on decades of failed infrastructure.
        - Filing of enforcement actions before the NH Board of Manufactured Housing, or equitable relief under RSA 498-A or federal diversity jurisdiction.
    - As a result, the vote to approve the purchase was not freely given, but made under **duress and economic coercion.**
    -

2. **Misleading Financial Comparisons**

    - NHCLF compared the $985/month lot rent to local apartment rents ($1,899/month) without disclosing that:
        - The apartment rent **includes maintenance, infrastructure, and amenities.**
        - The ROC lot rent **excludes the cost of homeownership**, mortgage, insurance, repairs, and now includes liability for known **sewer, water, and drainage failure**.
    - The comparison was crafted to give a **false impression of financial prudence**, when in fact, residents were being forced into a structurally and financially **unsound investment.**

3. **Suppression of Independent Representation**

    - NHCLF and ROC USA engaged in **self-dealing**, controlling the board selection, legal counsel, and purchase terms of the ROC Cooperative.
    - Independent cooperatives organized under RSA 301-A were excluded from negotiations.
    - Residents were denied **independent legal counsel**, a fiduciary review of sale terms, or access to third-party financing options.

4. **Manipulation of Nonprofit and Charitable Capital**

    - NHCLF used **charitable assets**, including Program Related Investments (PRIs) from private foundations, to finance a transaction that **primarily benefited the prior for-profit owner**, not the residents.
    - NHCLF required **waivers of liability for injury and death** in ROC documents, despite known hazards from failed infrastructure—an egregious misuse of charitable capital and a violation of public trust.

5. **Resulting Harm**

    - The community now faces:
        - Unaffordable lot rent;
        - No capital reserves;
        - A $6.8 million infrastructure liability;

- Legal waivers shielding NHCLF and the prior owner from future lawsuits;
- And loss of opportunity to pursue more sustainable and affordable ownership models.

**This pattern of conduct constitutes misrepresentation, suppression of lawful competition, and misuse of charitable assets— grounds for injunctive relief, damages, and disgorgement.**

2. One such predicate act is the use and enforcement of **illegal attorney fee-shifting provisions** in the Cotton Farm Village Cooperative's "community rules," which were imposed on members without access to independent legal counsel and without disclosure of controlling precedent (*Deminico v. Centennial Estates Cooperative*, 2009). These rules unlawfully:

- Require members to pay the cooperative's attorney's fees **regardless of outcome** or forum, including appeals to the NH Supreme Court.
- Authorize such fees to be imposed **as "additional rent,"** placing members at risk of eviction or loss of their home.
- Were designed to **intimidate and suppress legal challenges** to the cooperative's governance, rules, and sale structure.

3. This policy violates New Hampshire public policy, the New Hampshire Consumer Protection Act (RSA 358-A), and the constitutional right of access to courts (First and Fourteenth Amendments).
4. From the outset of NH CLF's involvement, its staff member **Hannah Chisholm** refused to recognize the Independent Cotton Farm Cooperative—lawfully formed under RSA 301-A—as a legitimate stakeholder, stating explicitly:

   "We cannot use the independent co-op because it was formed without ROC USA."

   Instead, Chisholm insisted NH CLF would revive a **1998 cooperative entity previously formed by ROC USA** which had **never purchased the park**. When the independent cooperative proposed a compromise—ejecting unelected interim directors to allow democratic reconstitution—Chisholm refused, stating:

   "We can't do that. We will use the 1998 co-op because it was formed by ROC."

   She acknowledged NH CLF had **"never had a situation with two co-ops before"** and stated that NH CLF would "**tweak it**," further illustrating the ad hoc and unlawful manipulation of corporate structures to exclude rightful resident oversight and suppress independent governance.

5. These actions violate **ICA Cooperative Principle 6 (Cooperation Among Cooperatives)** and further demonstrate Defendants' intent to monopolize cooperative housing conversions through exclusionary, deceptive, and coercive means.
6. Only **days before the scheduled closing**, the president of the Independent Cotton Farm Cooperative was informed of the sale and issued a **Notice of Intent to Sue** to ROC USA, NH

## Request for Temporary Injunction

7. Plaintiff seeks a **Temporary Restraining Order (TRO)** and **Preliminary Injunction** to halt the imminent closing of the sale of Cotton Farm Village Cooperative pending:

- Judicial review of the unlawful exclusion of the Independent Cooperative;
- Investigation of violations of state housing law, federal civil rights, and RICO statutes;
- Review of nonprofit misconduct involving charitable financing (including the Silverman Foundation PRI);
- Removal or invalidation of coercive and illegal provisions in governing documents.

7. On or about **[date]**, Defendant Park Owner entered into a **Purchase and Sale Agreement** with Defendant Corporate Buyer for the sale of the manufactured housing park at a stated price of ~~$[X~~ **million]**. 13 mil
8. The price in the agreement was not based on any **independent appraisal, informal valuation,** or **market analysis** and is **grossly inflated** in comparison to similarly situated parks in the region and the deteriorated condition of the subject park.
9. The purchase agreement was signed **before** providing notice to residents or any cooperative under **RSA 205-A:21**. Residents were later notified and given only the option to match the inflated and unsupported offer.
10. The agreement did not contain a contingency clause requiring compliance with RSA 205-A:21, nor did it disclose the condition of the park or offer access to reasonable financial underwriting or valuation.
11. The park is in substantial disrepair, and repair estimates exceed **$[X million]**, yet no offset for capital liabilities was included in the proposed sale price.

## IV. CLAIMS FOR RELIEF

**Count I – Declaratory Judgment (28 U.S.C. § 2201)**

13. Plaintiff seeks a declaration that the purchase agreement between Defendants is **unenforceable** as to its current terms and is in **violation of RSA 205-A:21**.

**Count II – Injunctive Relief**

14. Plaintiff seeks an order enjoining the sale or transfer of the manufactured housing park until:

- Proper notice is given to residents under RSA 205-A:21;
- An independent market valuation is completed and disclosed;
- Residents are granted the opportunity to exercise their statutory right of first refusal under fair market conditions.

**Count III – Fraud and Bad Faith Dealing (State Law Claim)**

15. Defendants conspired or acted in concert to frustrate the legislative intent of RSA 205-A:21 by creating a sham transaction with an inflated sale price unsupported by appraisal, intended to prevent residents from purchasing the park.

**Count IV – Civil Conspiracy**

16. Defendants engaged in a civil conspiracy to circumvent New Hampshire state law and deprive residents of their statutory rights through collusive pricing and procedural manipulation.

## V. PRAYER FOR RELIEF

Plaintiff respectfully requests:

1. A **temporary restraining order** and **preliminary injunction** halting any sale or transfer of the park;
2. A **declaratory judgment** that the current agreement is void or unenforceable under RSA 205-A:21;

**(Constitutional Violations, Consumer Protection Act, and ICA Principle Violations)**

5. ~~[illegible]~~, **NH Community Loan Fund (NH CLF)** and **ROC USA** are essential actors in the overall scheme. From the outset, NH CLF staff member **Hannah Chisholm** refused to recognize the Independent Cotton Farm Cooperative, stating:

   "We cannot use the independent co-op because it was formed without ROC USA."
6. NH CLF and ROC instead revived a **1998 cooperative entity** that had **never purchased the park**, and refused to allow the independent cooperative to reconstitute governance or participate in the sale, stating:

   "We can't do that. We will use the 1998 co-op because it was formed by ROC."

   Chisholm acknowledged this was an unprecedented scenario, stating:

   "We've never had a situation with two co-ops before... we'll tweak it."
7. These actions **violated ICA Cooperative Principle 6** and undermined democratic governance, fair dealing, and state cooperative laws.

## Illegal Attorney Fee-Shifting and Suppression of Rights

8. Residents who became members of the ROC-formed Cotton Farm Village Cooperative were subjected to **illegal attorney fee-shifting provisions** that:

- Require members to pay the cooperative's attorney's fees **regardless of outcome** or forum;
- Treat such fees as **"additional rent"**, enforceable through eviction;
- Were adopted without **independent legal counsel** or disclosure of relevant precedent (*Deminico v. Centennial Estates*).

9. This scheme has had a **chilling effect**, with residents reporting fear of legal action:

   "We can't fight ROC."
10. These provisions violate public policy, constitutional rights (access to courts), RSA 205-A, and RSA 358-A (NH Consumer Protection Act).

## Request for Temporary Injunction

11. Plaintiff seeks a **Temporary Restraining Order (TRO)** and **Preliminary Injunction** to halt the imminent closing of the sale of Cotton Farm Village pending:

- Judicial review of Defendant Burnham's fraudulent conveyance scheme;
- Evaluation of the exclusion of the Independent Cooperative;
- Removal of coercive and unlawful rules embedded in the ROC-formed cooperative governance documents.

## Section X: Use of Shell Entities Across Multiple States to Facilitate Fraudulent Transfers and Obscure Ownership

The Defendant, **Jenneth C. Burnham**, is the sole owner or controlling member of a network of interrelated corporate entities, including but not limited to:

- **Cotton Farms MHP LLC (New Hampshire)**
- **Cotton Farms MHP LLC (New York)**
- **Cotton Farms MHP LLC (Delaware)**
- **Cotton Farms MHP LLC (Georgia)**
- **KDM Mobile Homes LLC**
- **KDM Development LLC**
  *(Collectively, the "Burnham Entities")*

Each of the above-named Cotton Farms MHP LLC entities has been assigned a separate **Federal Employer Identification Number (FEIN)** and is registered in a different state. Despite the appearance of a multi-jurisdictional business operation, **only the New Hampshire entity owns real property or conducts any known business activity**—specifically, the operation of **Cotton Farm Village mobile home park in Danville, New Hampshire**.

The remaining entities serve **no legitimate operational purpose**. They **own no mobile home parks**, **do not engage in any commercial activity**, and **do not maintain offices or employees** in their respective states. Their only apparent function is to:

- **Obscure the ownership and control** of Cotton Farm Village,
- **Facilitate asset shielding and tax evasion**, and
- **Support a scheme to artificially deflate property valuation for tax purposes** while **simultaneously inflating asset value** for financing purposes.

## Fraudulent Transfer of Home Asset to Shell Entity

Evidence further shows that a mobile home situated within Cotton Farm Village was originally titled under **KDM Mobile Homes LLC**—another Burnham-controlled entity. This asset was subsequently transferred for **less than one percent of market value** to **Cotton Farms MHP LLC**, the same New Hampshire LLC that now serves as the park's management and collection office.

The purpose and effect of this transfer was to:

- **Evade revenue and property transfer taxes**, and
- Conceal the **true value of real assets** within the park for municipal and regulatory scrutiny.

This practice is consistent with an ongoing scheme to manipulate asset ownership across multiple shell entities to **evade state oversight, deceive taxing authorities**, and **qualify for favorable nonprofit or subsidized financing** (e.g., from the NH Community Loan Fund or charitable foundations such as the Marty and Dorothy Silverman Foundation).

**Attorney Fee-Shifting Provision Invalid Under New Hampshire Law in Resident-Owned Communities**

Cotton Farm Village Cooperative, formed with the involvement of the New Hampshire Community Loan Fund (NH CLF) and ROC USA, includes an **attorney fee-shifting clause** in its community rules and membership agreements.

This clause obligates members to pay the cooperative's legal fees if they bring unsuccessful claims—even those challenging the legality of the rules or board actions.

All new members were required to vote unanimously to accept these provisions **without access to independent legal counsel**, and without disclosure of **controlling legal precedent—Deminico v. Centennial Estates Cooperative (NH Board of Manufactured Housing, 2020)**—which found that such fee-shifting provisions **violate public policy and are unenforceable in disputes between manufactured housing residents and their cooperatives.**

This creates an **unconscionable contractual arrangement**:

- Members were not informed of their right to counsel or to challenge illegal provisions.
- The agreement contains **coercive waivers** and **liability-shielding terms** drafted by NH CLF-appointed counsel.
- The cooperative governance structure was not formed democratically but rather imposed by third-party nonprofit financiers and consultants with a financial stake.

Such provisions likely violate:

- **New Hampshire consumer protection law (RSA 358-A)**
- **Common law unconscionability**
- **Public policy under RSA 205-A and related housing law**
- Potentially **IRS nonprofit law restrictions** if the financing involved program-related investments (PRIs)

**Illegal Attorney Fee-Shifting Clause Enforced as "Additional Rent" in Violation of Public Policy**

Cotton Farm Village Cooperative, established under the direction of the New Hampshire Community Loan Fund (NH CLF) and ROC USA, imposes **attorney fee-shifting provisions** in its **community rules** and **membership agreements** that:

1. **Require members to pay the cooperative's attorney fees** as "additional rent":

and fraudulent conveyances intended to deprive lawful stakeholders—including Plaintiff and the Independent Cotton Farm Cooperative—of their legal rights and economic interests.

2. One such predicate act is the use and enforcement of **illegal attorney fee-shifting provisions** in the Cotton Farm Village Cooperative's "community rules," which were imposed on members without access to independent legal counsel and without disclosure of controlling precedent (*Deminico v. Centennial Estates Cooperative*, 2020). These rules unlawfully:

- Require members to pay the cooperative's attorney's fees **regardless of outcome** or forum, including appeals to the NH Supreme Court.
- Authorize such fees to be imposed **as "additional rent,"** placing members at risk of eviction or loss of their home.
- Were designed to **intimidate and suppress legal challenges** to the cooperative's governance, rules, and sale structure.

3. This policy violates New Hampshire public policy, the New Hampshire Consumer Protection Act (RSA 358-A), and the constitutional right of access to courts (First and Fourteenth Amendments).
4. Furthermore, ROC USA and NH CLF **intentionally suppressed lawful oversight and participation** by the Independent Cotton Farm Cooperative, formed over 18 months earlier under RSA 301-A. Despite publicly disclosed intent to purchase and oversee the mobile home park in a lawful and democratic manner, ROC USA:

- **Refused to communicate** or cooperate with the independent cooperative in violation of **ICA Principle 6 (Cooperation Among Cooperatives)**.
- Facilitated a closed sale process without public notice or democratic participation by residents.
- Deliberately excluded the independent cooperative from oversight of rule formation, financing structure, and due diligence regarding the known $6.8 million in infrastructure failure.

5. Only **days before the scheduled closing**, the president of the Independent Cotton Farm Cooperative was informed of the sale and issued a **Notice of Intent to Sue** to ROC USA, NH CLF, the park owner, and all involved parties. The Cooperative intends to assert standing and intervene in the transfer of the park, which constitutes a fraudulent conveyance and illegal suppression of member and consumer rights under state and federal law.

## Request for Temporary Injunction

6. Plaintiff seeks a **Temporary Restraining Order (TRO)** and **Preliminary Injunction** to halt the imminent closing of the sale of Cotton Farm Village Cooperative pending:

- Judicial review of the unlawful exclusion of the Independent Cooperative;
- Investigation of violations of state housing law, federal civil rights, and RICO statutes;
- Review of nonprofit misconduct involving charitable financing (including the Silverman Foundation PRI);
- Removal or invalidation of coercive and illegal provisions in governing documents.

---

**Summary:**

**The choice NHCLF presents is dishonest and manipulative.** It's not about empowering residents—it's about shielding themselves and investors from legal and financial accountability while selling an illusion of ownership. The residents **do have choices**—they just haven't been given **truthful information** or **independent legal representation** to make them.

**Count X: Fraudulent Misrepresentation and Coercion in Violation of Federal and State Law**

**Defendants New Hampshire Community Loan Fund (NHCLF), ROC USA, and their agents engaged in materially misleading conduct, including coercive tactics and false representations, to induce vulnerable homeowners to purchase Cotton Farm Village at a grossly inflated price under the guise of "resident ownership," despite long-standing infrastructure failure, legal violations, and unaffordable rent levels.**

1. **False Binary and Coercion**
    - NHCLF presented a false choice to residents: either (a) vote to purchase the park at the highest lot rent in New Hampshire cooperative history ($985), or (b) face potential lot rent increases from a hypothetical investor buyer, or be forced into an apartment costing $1,799–$1,899/month.
    - This framing deliberately ignored lawful and viable alternatives, including:
        - Reorganization under an **independent cooperative** not affiliated with NHCLF/ROC USA.
        - **Public acquisition, condemnation**, or **eminent domain** based on decades of failed infrastructure.
        - Filing of enforcement actions before the NH Board of Manufactured Housing, or equitable relief under RSA 498-A or federal diversity jurisdiction.
    - As a result, the vote to approve the purchase was not freely given, but made under **duress and economic coercion.**
    -

2. **Misleading Financial Comparisons**

   - NHCLF compared the $985/month lot rent to local apartment rents ($1,899/month) without disclosing that:
     - The apartment rent **includes maintenance, infrastructure, and amenities.**
     - The ROC lot rent **excludes the cost of homeownership**, mortgage, insurance, repairs, and now includes liability for known **sewer, water, and drainage failure.**
   - The comparison was crafted to give a **false impression of financial prudence**, when in fact, residents were being forced into a structurally and financially **unsound investment.**

3. **Suppression of Independent Representation**

   - NHCLF and ROC USA engaged in **self-dealing**, controlling the board selection, legal counsel, and purchase terms of the ROC Cooperative.
   - Independent cooperatives organized under RSA 301-A were excluded from negotiations.
   - Residents were denied **independent legal counsel**, a fiduciary review of sale terms, or access to third-party financing options.

4. **Manipulation of Nonprofit and Charitable Capital**

   - NHCLF used **charitable assets**, including Program Related Investments (PRIs) from private foundations, to finance a transaction that **primarily benefited the prior for-profit owner**, not the residents.
   - NHCLF required **waivers of liability for injury and death** in ROC documents, despite known hazards from failed infrastructure—an egregious misuse of charitable capital and a violation of public trust.

5. **Resulting Harm**

   - The community now faces:
     - Unaffordable lot rent;
     - No capital reserves;
     - A $6.8 million infrastructure liability;

The New Hampshire Community Loan Fund (NHCLF) is wrong to frame the decision as a binary choice between:

1. **Paying $985 in lot rent in a resident-owned cooperative** (the **highest** in NH ROC history),
   **versus**
2. **Paying $1,799–$1,899 for an apartment the same size.**

Here's why this argument is **misleading, coercive, and economically unsound:**

---

**1. False Binary: It Ignores Other Ownership Models**

- NHCLF frames it as "buy the co-op or face unaffordable apartment rent," ignoring **other viable options:**
  - Forming an **independent resident cooperative** not controlled by NHCLF/ROC USA.
  - Demanding **public ownership** or **land trust acquisition** due to infrastructure failure.
  - Legal remedies to block predatory or inflated sales due to **habitability violations.**

---

**2. Coercion: "No Choice" Is Not Consent**

- Saying residents "voted to buy because they have no choice" is **not true consent—it's economic coercion.**
- This undermines the legitimacy of the "resident ownership" model. If lot rent is **unsustainably high,** it's **not ownership,** it's **debt servitude** with a cooperative label.

---

**3. Unfair Comparison: Rent vs. Equity**

- The $1,899 apartment includes:
  - **Utilities, maintenance, amenities,** and no major repair responsibilities.
- The $985 ROC lot rent **does NOT include:**

Only **115 of the newly joined members** were part of the **revived 1998 cooperative.** These individuals were permitted to vote **only after paying a $5 membership fee on January 6, 2025.** They were **not advised by an independent counsel**, nor did they **understand how this vote would impact their legal rights or the long-term security of their homes for future generations.** As a result, the vote occurred under **unjust and coercive circumstances,** locking them into the terms of a sale that may severely and permanently affect their property interests and economic rights.

[illegible], President, Cotton Farm Homeowners Alliance Cooperative
Dated: May 29/2025